**Nina Doreen Davis BOYCE, Plaintiff and Appellant,**

v.

**Milan Mack BOYCE, Defendant and Respondent.**

**No. 16342.**

Supreme Court of Utah.

March 5, 1980.

R. M. Child & Donovan C. Snyder of Bayle, Child & Ritchie, Salt Lake City, for plaintiff and appellant.

Jed W. Shields, David S. Dolowitz of Parsons, Behle & Latimer, Salt Lake City, for defendant and respondent.

STEWART, Justice:

Plaintiff appeals from a judgment and order of the district court denying her motion to set aside a divorce decree pursuant to Rule 60(b), U.R.C.P., on grounds of fraud. We reverse.

In May 1977 plaintiff filed a complaint for divorce, together with a motion for temporary support. By order of July 28, 1977, defendant was required to make an accounting of his assets. At a hearing on September 27, defendant testified as to his income and assets, and plaintiff was awarded, *inter alia*, $400 a month in temporary support. As a result of defendant's failure to answer interrogatories propounded by plaintiff, a default judgment against defendant was entered, but the default was subsequently set aside. By order of March 22, 1978, defendant was ordered to supply more complete answers to plaintiff's interrogatories. On April 7, 1978, the divorce was granted, based on a settlement between the parties. The original findings and decree were erroneous, and corrected findings and a new decree of divorce were entered on June 22, 1978.

On July 20, 1978, plaintiff filed (1) a motion for relief from the final decree pursuant to Rule 60(b), U.R.C.P., with a supporting affidavit, (2) a notice of lis pendens against the real property that had been awarded to defendant, and (3) a notice of appeal. Plaintiff averred that she had obtained material and relevant information regarding the real property which could not have been discovered by due diligence in time to move for a new trial, that defendant had been guilty of fraud, misrepresentation or misconduct in relation to the divorce action, and that she had stipulated to the settlement under duress. Plaintiff's motion was heard on August 1, 1978. By minute entry on that date, the court ordered all real property and cash to be restored as they were on April 7, 1978. Counsel for plaintiff prepared an order reflecting the court's decision, but the order was not signed. On August 21, 1978, defendant filed an objection to the order of restoration

based upon his prior disposition of some of the property and the consequent impossibility of complying with the court's order.

At a hearing on September 8, 1978, the trial judge stated that because of the filing of plaintiff's notice of appeal, he did not have jurisdiction to enter his previous order setting aside the decree. The August 1 order was therefore vacated. On September 20, 1978, plaintiff voluntarily dismissed her appeal to this Court. A further hearing in district court was held on October 17, 1978, at which affidavits and the testimony of witnesses called by plaintiff were presented on the issue of setting aside the divorce decree. Memoranda were also submitted by the parties. The trial court ruled that plaintiff had failed to establish a basis upon which the decree could be set aside. The court stated its opinion that plaintiff, prior to the time of the divorce decree, had knowledge of all the information referred to in the parties' post-decree affidavits. After the subsequent denial of a further motion to modify the decree and to conduct further discovery, plaintiff appealed to this Court. Plaintiff contends that in light of the evidence the trial court abused its discretion in denying her Rule 60(b) motion.

The facts relied on by plaintiff to support her claim of misrepresentation by defendant concern the disclosure of defendant's assets. In April 1977 defendant represented to plaintiff that his net worth was approximately $200,000, based on total assets of $300,000 and debts of $100,000. Plaintiff alleges that she relied on these figures in agreeing to a settlement giving her $98,000 as property settlement and $2,000 as lump-sum alimony.

In contrast to the figures disclosed to plaintiff in April 1978, defendant gave substantially different information in connection with a loan application in May 1978. The latter statement reflected a net worth of $1,154,690.10, with total assets of $1,383,-920.92. The difference in the two figures is primarily attributable to the following:

(1) In May defendant included among his own assets the assets of corporations which defendant had transferred to his parents prior to April 1978 and in which he indicated he owned no stock; plaintiff had therefore believed defendant no longer owned these corporate assets;

(2) The May statement showed a fair market value of $250,000 for ten ½ acre lots which had been appraised at $46,500 the preceding March. Plaintiff relied on the earlier appraisal figure in agreeing to the settlement;

(3) Equity in the personal residence was stated in April to be $16,537; on the May statement it was listed at over $100,000;

(4) Rental property jointly held by the parties and located in Salt Lake City was valued at $65,000 in March 1978. In the May statement it was listed as having a market value of $125,000 with a mortgage of $11,502.

Defendant's position is that the assets listed on the May 1 financial statement included family-owned assets as well as his personal assets and that plaintiff had the opportunity to evaluate all the information concerning defendant's financial worth prior to entering into a settlement agreement.

The evidence in this case indicates that the property settlement may be inequitable and an affront to our judicial system because of the possibility of fraud on the plaintiff and the court. It appears that the assets of the parties may actually have been more than five times the amount disclosed by defendant at the time of the settlement agreement. The record lends support to plaintiff's contention that defendant prevented plaintiff from gaining full and accurate knowledge of his total assets by transferring his corporate holdings to family members without relinquishing control of those assets, by understanding the true value of jointly-held property, and by avoiding compliance with court-ordered discovery.

It appears that the trial court found that plaintiff, before the entry of the decree, had reason to suppose that the valuation of the assets as described by defendant was not correct and on that ground refused to entertain a Rule 60(b) motion. However, defendant's record of noncompliance with

discovery procedure and other tactics designed to prevent full disclosure, if true, is a perversion of the judicial process and will not be overlooked solely on the ground that the plaintiff is perhaps guilty of some degree of fault in not being as diligent as she might have been. A trial court, in the highly equitable matter of making a fair division of property in the context of a dispute that is often highly acrimonious and bitter, must take care that evasive stratagems not stand in the way of a just resolution. The determination of what assets are subject to the divorce proceeding may not be based on gamesmanship calculated to obfuscate the facts; the judicial system is not to be manipulated in divorce proceedings by one who actively and aggressively misleads the court and the opposing party, simply because the opposing party was in a small measure delinquent in not discovering the fraud prior to entry of a final decree.

This Court stated the standard for the granting of a Rule 60(b) motion in *Warren v. Dixon Ranch Co.*, 123 Utah 416, 419–20, 260 P.2d 741, 742–43 (1953), a case involving a motion to vacate a default judgment, as follows:

> The allowance of a vacation of judgment is a creature of equity designed to relieve against harshness of enforcing a judgment, which may occur through procedural difficulties, the wrongs of the opposing party, or misfortunes which prevent the presentation of a claim or defense . . .. [A]n equity court . . may exercise wide judicial discretion in weighing the factors of fairness and public convenience, and this court on appeal will reverse the trial court only where an abuse of this discretion is clearly shown.

> The difficulty facing the trial court upon a motion to vacate the judgment lies in the fact that a compromise between two valid considerations must be selected. A rule which would permit the re-opening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of res judicata and create a hardship to the successful litigant in causing him to prosecute his action more than once . . .; on the other hand, the court is anxious to protect the losing party who has not had the opportunity to present his claim or defense. Discretion must be exercised in furtherance of justice and the court will incline toward granting relief in a doubtful case to the end that the party may have a hearing. However, the movant must show that he has used due diligence and that he was prevented from appearing by circumstances over which he had no control. [Citations omitted.]

In the present case, though plaintiff had a hearing, she was denied a judgment based on accurate information and full disclosure relative to the merits of her position.

The principles governing a motion to set aside a decree of divorce obtained through fraud were stated in *Haner v. Haner*, 13 Utah 2d 290, 373 P.2d 577 (1962).[1] Although the appellant in *Haner* was found not to be entitled to relief from a judgment she alleged was based on fraud, the Court stated that relief should be granted

> . . . when it appears that the processes of justice have been so completely thwarted or distorted as to persuade the court that in fairness and good conscience the judgment should not be permitted to stand . . .. [13 Utah 2d at 301, 373 P.2d at 578.]

A liberal standard for application of Rule 60(b) in divorce cases is justified by the doctrine of the continuing jurisdiction that a divorce court has over its decrees. Clearly, a court should modify a prior decree when the interests of equity and fair dealing with the court and the opposing party so require. Although the trial court

---

1. *Haner* involved a motion to set aside or modify a divorce decree not, apparently, based on Rule 60(b). Although *Haner* stated that the granting of relief would be justified only where the alleged fraud was extrinsic, or based on conduct or activities outside of the court proceedings, Rule 60(b)(3) expressly provides that a party may be relieved from a final judgment in cases of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . .."

displayed great patience in dealing with this case, we cannot avoid the conclusion, on the basis of the contentions before this Court, that an injustice may have been perpetrated by defendant's actions. Accordingly, we are compelled to the conclusion that the trial judge abused his discretion in not allowing plaintiff a hearing under Rule 60(b).

We reverse the trial court's denial of plaintiff's Rule 60(b) motion for relief from the provisions of the divorce decree and remand for reconsideration of the issues of property settlement, alimony, and child support.

■ Plaintiff also contends that the trial court erred in ordering the removal of the notice of lis pendens she filed on July 31, 1978. The notice applied to three properties held in joint tenancy by the parties that plaintiff had quitclaimed to defendant pursuant to the divorce decree. In view of the decision to remand this case, we point out that a notice of lis pendens may be filed with respect to property whose title would be affected by pending judicial action, § 78–40–2 U.C.A. (1953), as amended. The notice would not be effective, however, where third-party rights have arisen subsequent to the execution of quitclaim deeds by plaintiff in compliance with the original divorce decree if the third party had no actual notice.

Plaintiff has raised other issues which need not be decided in view of our disposition of this case.

Reversed and remanded. Costs to Plaintiff.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.