Opinion
DAVIS, Judge:
€ 1 Clyde Rhodes, Joseph Naso, and Rene Naso Evans (collectively, Defendants) appeal from an Order and Judgment, claiming that the trial court abused its discretion by striking their Answer and entering judgment against them as a discovery sanction pursuant to rule 37 of the Utah Rules of Civil Procedure. See Utah R. Civ. P. 37(0)(@). In the alternative, Defendants contend that even if the sanction was otherwise appropriate, the trial court erred by entering judgment because Yuanzong Fu's Complaint fails to set forth factual allegations supporting the relief requested. We affirm but remand for a calculation of fees on appeal.
BACKGROUND
T2 On August 7, 2008, Fu filed his Complaint against Defendants [1] for breach of contract, fraud, negligent misrepresentation, foreclosure, and fraudulent transfer. The claims arise out of four real estate investments Fu made (the Investments) between February and July of 2007. The Investments were each evidenced by a promissory note and were to be repaid in monthly installments and secured by trust deeds against certain real property. The Complaint alleges that the trust deeds were never recorded against the property and that Fu had been repaid only a small fraction of the funds advanced.
T3 Defendants filed their Answer on September 11, 2008. The Answer includes an affirmative defense that "[Fu) has failed to state a cause of action against ... Defendants upon which relief can be granted." On January 12, 2009, the trial court entered a stipulated discovery plan and order, providing that all fact discovery would be completed no later than April 28, 2009. Subsequent, ly, Fu served his first set of interrogatories, requests for the production of documents, and requests for admissions on Defendants. Because Defendants failed to respond to any of the discovery requests, Fu filed a motion to compel.
{ 4 On May 12, 2009, the trial court granted Fu's motion and warned that "Hf ... Defendants ... failled] to provide all requested discovery within ten days ..., Defendants' Answer [would] be stricken and [Fu would] be entitled to judgment as prayed for in the Complaint." Defendants responded to Fu's interrogatories within ten days but failed to respond completely to the remaining discovery requests. Rather than seek immediate redress from the trial court, however, Fu apparently reached a compromise with Defendants, which is reflected in a stipulated amended case management order filed on March 15, 2010. The order provides that "[flact discovery, including responses to written discovery and depositions, [was to] be completed no later than May 31, 2010." *83 (Emphasis omitted.) Despite that new order, the parties' discovery disputes continued.
[5 On June 2, 2010, Fu filed a motion for entry of judgment pursuant to rule 87, alleging that Defendants had "engaged in a deliberate pattern of promising [documents] and then" failing to provide them in an attempt to hinder Fu in taking depositions and prosecuting his case. See generally Utah R. Civ. P. 87(e)@2)(D) ("[Tihe court in which the action is pending may impose appropriate sanctions for the failure to follow its orders, including ... dismiss all or part of the action, strike all or part of the pleadings, or render judgment by default on all or part of the action."). Fu also argued that Defendants failed to provide a full set of bank statements, books and records, tax returns, and proof of alleged payments on the Investments. Defendants disputed these assertions and claimed that they had produced all bank statements, did not understand what the requests for books and records entailed, and did not have any documents evidencing payments to Fu or tax returns for the years requested.
T6 At an August 14, 2010 hearing on the motion for entry of judgment, Defendants claimed to have provided all requested documents within their control, but Fu argued to the contrary. The trial court asked Fu to submit a discovery violations timeline, which he filed on September 2, 2010. On September 20, the trial court granted Fu's motion for entry of judgment. Although the court acknowledged that "in most cases, lesser sanctions are usually sufficient and more appropriate in moving a case along," it found the more severe sanction of default judgment to be appropriate in this case, stating, "[Blased upon the [DJefendants' continued failures to comply with timely discovery, their failure to comply with the Court's previously entered Order to Compel, and their failure to comply with the Case Management Orders, ... [Fu's] Motion is based on good cause and should be granted." The trial court instructed Fu to prepare an order memorializing its decision.
T7 Defendants filed an objection to the proposed order and a motion to alter and amend the order, which the trial court set for hearing on December 20, 2010. Defendants challenged the proposed sanction as excessive and again claimed that they had fully complied with Fu's discovery requests. After hearing from the parties, the trial court noted, "The argument today is remarkably similar to what we heard at our last hearing. And the Court's unpersuaded that there's anything new or different at this point, and so, ... I'm going to enter the order as proposed by [Fu] at this time." The trial court entered judgment "against [Defendants}, jointly and severally, for breach of contract, common law fraud, and negligent misrepresentation and on the [Investments]" in the sum of $235,440, which includes interest, court costs, and attorney fees, and "for fraudulent transfer and foreclosure" relating to nine separate properties. Defendants appeal.
ISSUES AND STANDARDS OF REVIEW
18 Defendants argue that the rule 37 sanctions the trial court imposed in this case-striking their Answer and entering default judgment-were unduly severe and therefore constituted an abuse of the trial court's discretion. See generally Utah R. Civ. P. 87(e)(2). "As a general rule, district courts are granted a great deal of deference in selecting discovery sanctions, and we overturn a sanction only in cases evidencing a clear abuse of discretion." Kilpatrick v. Bullough Abatement, Inc., 2008 UT 82, ¶ 23, 199 P.3d 957.
19 Defendants also contend that even if it was otherwise appropriate for the trial court to strike their Answer, the trial court erred when it entered default judgment because the facts alleged in the Complaint do not support recovery under the stated legal theories. Defendants concede that this issue was not preserved but assert that supreme court precedent belies the necessity of preserving this type of claim for appeal. See infroe %14. We generally do not consider claims raised for the first time on appeal unless they fall under a recognized exception to the preservation rule. See Strawberry Elec. Serv. Dist. v. Spanish Fork City, 918 P.2d 870, 880 (Utah 1996).
*84 ANALYSIS
I. Severity of Sanetions
110 In reviewing a challenge to rule 37 sanctions, we first "consider whether the district court was justified in ordering sanctions" and "then review the type and amount of sanctions for abuse of discretion." PC Crane Serv., LLC v. McQueen Masonry, Inc., 2012 UT App 61, ¶ 32, 273 P.3d 396. Here, Defendants do not argue that a sanction was unjustified. Instead, they contend that the trial court abused its discretion by "imposing ... the most severe sanction available under Rule 37." "Even though dismissing an action is 'one of the most severe of the potential sanctions that can be imposed, it is clear from the language of rule 87 that it is within a trial court's discretion to impose such a sanction'" Allen v. Ciokewiczs, 2012 UT App 162, ¶ 32, 280 P.3d 425 (quoting Morton v. Continental Baking Co., 938 P.2d 271, 274 (Utah 1997)); see also Utah R. Civ. P. 37(e)(2). Accordingly, Defendants undertake a significant burden in attempting to show that the trial court abused its discretion in striking their Answer and entering default judgment. To meet that burden, Defendants "must show either that the sanction is based on an erroneous conclusion of law or that the sanction lacks an evidentiary basis." SFR, Inc. v. Comtrol, Inc., 2008 UT App 31, ¶ 14, 177 P.3d 629 (citation and internal quotation marks omitted). Defendants have failed to identify any error of law, and the record supports the trial court's decision.
1 11 The trial court expressly warned Defendants in May 2009 that they were at risk of having judgment entered against them, informing them that if they "failled] to provide all requested discovery within ten days ... [their] Answer [would] be stricken and [Fu would] be entitled to judgment as prayed for in the Complaint." Not only did they fail to meet this deadline, but they failed to provide the requested discovery even by the extended May 31, 2010 .deadline stipulated to in the amended case management order. By the time the trial court entered judgment against Defendants on September 20, 2010, nearly sixteen months had passed since the trial court's initial deadline and the discovery requests were still outstanding. The trial court afforded Defendants two opportunities to be heard before striking their Answer and entering default. Ultimately, while acknowledging the severity of the sanctions imposed, the court found that Fu's motion for entry of judgment was "based on good cause and should be granted" due to "[Dlefendants' continued failures to comply with timely discovery, their failure to comply with the Court's previously entered Order to Compel, and their failure to comply with the Case Management Orders." Under these cireum-stances, we are not convinced that it was an abuse of the trial court's discretion to strike the Answer and enter default judgment. See Morton, 988 P.2d at 275-76 (affirming dismissal as a discovery sanction where the plaintiff "had plenty of warning that his case was in trouble, considering he admitted to having received the motion to compel which specifically requested a court order threatening dismissal" but "did nothing to show the court that he was interested in diligently prosecuting his case"); Hales v. Oldroyd, 2000 UT App 75, ¶¶ 26, 28, 999 P.2d 588 (affirming the dismissal of a complaint as a discovery sanction where the plaintiff "continually delayed in responding to discovery requests"); Tuck v. Godfrey, 1999 UT App 127, ¶¶ 24-25, 981 P.2d 407 (affirming entry of default judgment as a discovery sanction where the defendant "had 'done virtually nothing' " to advance discovery).
II. Sufficiency of the Complaint
Next, Defendants argue that even if striking their Answer was appropriate, the facts alleged in the Complaint do not support recovery under the legal theories pleaded and, therefore, the trial court erred in entering judgment against Naso and Evans on all claims, and against Rhodes on the claims based on the July 23, 2007 investment. As discussed, rule 37 provides that "the court in which the action is pending may impose appropriate sanctions for the failure to follow its orders, including ... render judgment by defoult on all or part of the action." See Utah R. Civ. P. 37(e)(2)(D) (emphasis added); see also Knouff v. United States, 74 F.R.D. 555, 557 (W.D.Pa.1977) (mem.) (determining that a motion to strike an answer is, "in *85 effect if not form, an application for entry of judgment by default"). Nevertheless, as Defendants point out, that power is tempered by the requirement that the entry of judgment be supported by the well-pleaded allegations of the complaint. As the Utah Supreme Court has explained,
[A dJefendant's failure to answer and ensuing default ... require the court to accept the factual allegations as true, but the court [should] enter judgment as requested only if it determined those facts established an actionable claim. Were the rule otherwise, a court could be obligated to enter a money judgment on a complaint as frivolous as a refusal to share recipes with a neighbor. Thus, the court must determine whether an actionable claim exists.
American Towers Owners Ass'n, Inc. v. CCI Mech., Inc., 930 P.2d 1182, 1194 (Utah 1996) {omission and second alteration in original) (citation and internal quotation marks omitted) (holding that the trial court properly denied a motion to enter judgment against a party who failed to answer because the trial court's previous summary judgment in favor of other defendants established that the plaintiff's claims failed as a matter of law), abrogated. on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC, 2009 UT 65, 221 P.3d 234.
$18 Accordingly, "[a)l trial court asked to render a judgment by default must first conclude that the uncontroverted allegations of an applicant's petition are, on their face, legally sufficient to establish a valid claim against the defaulting party." Stevens v. Collard, 837 P.2d 593, 595 (Utah Ct.App. 1992); see also id. at 598 (upholding the trial court's refusal to modify custody despite the father's failure to respond because the mother's sparse allegations were legally insufficient to reopen the custody decree). Defendants contend that the same requirements must be met before judgment can be entered as a discovery sanction. Seq, eg., Microsoft Corp. v. Computer Care Ctr., Inc., 2008 WL 41796583, at *6 (E.D.N.Y. Sept. 10, 2008) (stating that "regardless of whether default is entered as a discovery sanction or for failure to defend," the factual allegations of the complaint must constitute a legitimate cause of action); Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc., 253 Wis.2d 238, 646 N.W.2d 19, 30 (2002) ("A successful motion to strike an answer will normally lead to a default judgment. Therefore, a motion to strike an answer to facilitate a default judgment should satisfy the same criteria as the motion for default judgment.").
§14 However, Fu argues that we should not evaluate the sufficiency of the Complaint on appeal because Defendants did not raise this issue in the trial court. The defense of "failure to state a claim can[not] be raised for the first time on appeal." Smith v. Vuicich, 699 P.2d 763, 765 (Utah 1985) (per curiam) (discussing the issue in the context of an appeal after a jury trial); see also Restatement (Second) of Judgments § 78 (1982) ("Relief from a judgment must be obtained by means of a motion for that purpose in the court that rendered the judgment unless relief may be obtained more fully, conveniently, or appropriately by some other procedure."). Nevertheless, Defendants insist that when a trial court strikes a party's pleading and enters a default judgment, the party may challenge the sufficiency of the complaint to support the judgment for the first time on appeal. Defendants' position is not supported by our jurisprudence.
115 In State v. Sixteen Thousand Dollars United States Currency, 914 P.2d 1176 (Utah Ct.App.1996), we rejected the idea that a defendant could appeal directly from a default judgment without first raising grounds for setting aside the default with the trial court. See id. at 1178. We held that this rule extends even to alleged legal errors, such as the trial court's failure to determine the legal sufficiency of the pleadings, see generally American Towers, 930 P.2d at 1194 (explaining that a trial court should enter default judgment "only if it determined [that the factual allegations] established an actionable claim" {emphasis, citation, and internal quotation marks omitted)), or its having awarded damages in excess of the amount prayed for, see generally Kats v. Pierce, 732 P.2d 92, 95 (Utah 1986) (per curiam) ("A default judgment shall not be different in kind from, or exceed in amount, that speci *86 fied in plaintiff's complaint." (citing Utah R. Civ. P. 54(c)(@))). See Sixteen Thousand, 914 P.2d at 1178. In order to preserve a challenge to a default judgment entered for failure to appear, the defendant must first seek relief in the trial court by making "a Rule 60(b) motion for relief from judgment, or a motion for a new trial, or to amend or alter the judgment, pursuant to Rule 59" of the Utah Rules of Civil Procedure. Id. See generally Utah R. Civ. P. 59; id. R. 60(b). Only then may the party "appeal from a denial of a Rule 60(b) motion or from the default judgment directly, following a denial of a Rule 59 or other postjudgment motion.[2] * Sixteen Thousand, 914 P.2d at 1178. This rule is consistent with the policy that "[al trial court should be given an opportunity to correct errors of law, as well as to excuse a defaulting party when reasonable, so as to resolve any arising controversy before appeal." Id. at 1179.[3]
T16 Despite our precedent directly addressing the preservation rule in the context of a default judgment, Defendants point us to the supreme court's statement in Skanchy v. Calcados Ortope SA, 952 P.2d 1071 (Utah 1998), that "[oln appeal from a default judgment, a defendant may contest 'the sufficiency of the complaint and its allegations to support the judgment."" Id. at 1076 (quoting Nishimatisu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975)). Taken out of context, this statement appears to suggest an exception to the preservation rule. However, it is clear from the Skanchy court's accompanying discussion that it was considering not whether a claim that a complaint was insufficient to support a default judgment could be raised for the first time on appeal, but whether it could be raised af all in light of the fact that "well-pled facts alleged in the pleadings of the nondefaulting party are binding and can support the default judgment." See id.
T17 The foundation for this discussion is apparent in Nishimatsu Construction Co. v. Houston National Bank, 515 F.2d 1200 (5th Cir.1975), the case on which the Skaonchy court relied in asserting that a defendant could challenge the sufficiency of the complaint on appeal. See Skanchy, 952 P.2d at 1076. The Nishimatsu court explained that a defendant is not, by operation of a default judgment, "held to admit facts that are not well-pleaded or to admit conclusions of law," that is, "a default is not treated as an absolute confession by the defendant of his Hability and of the plaintiff's right to recover" and a defendant is therefore "entitled to contest the sufficiency of the complaint and its allegations to support the judgment." Niskimatsu, 515 F.2d at 1206 (emphasis omitted). The Skanchy court's discussion makes it apparent that it was this issue, not the preservation rule, that it had in mind when it quoted Nishimaisu: "Although factual allegations are deemed admitted, a plaintiff's legal allegations are not binding. Accordingly, a court may grant relief only if a valid legal basis supported by well-pled facts is *87 asserted in the complaint." Skanchy, 952 P.2d at 1076 (citation omitted).[4]
1 18 Indeed, the Skanchy opinion does not refer to the preservation rule at all and does not seem to view the challenge to the sufficiency of the complaint as being raised for the first time on appeal.[5] Id. at 1076-77. We are unwilling to take the Skanechy court's isolated statement that a defendant subject to a default judgment is entitled to contest the sufficiency of the complaint on appeal-made in the context of a discussion of whether legal allegations are binding, rather than in the context of a preservation discussion-as a definitive ruling carving out an exception to the preservation requirement, especially in light of our undisturbed precedent in Sixteen Thousand explicitly requiring preservation. See Sixteen Thousand, 914 P.2d at 1178-79.
$19 Furthermore, even if a defense of failure to state a claim could be raised for the first time on appeal in the context of a default judgment entered for failure to appear, it is not reasonable for such a rule to extend to an appeal of a default judgment entered pursuant to rule 37. Where a default judgment is entered as a discovery sanction-as opposed to being entered as a result of a defendant's failure to answer a complaint-"the sanctioned party [will have] filed responsive pleadings, ... appeared before the trial court, and had an opportunity to argue against the sanction before the trial court." Id. (distinguishing a default judgment entered as a discovery sanction pursuant to rule 37 from a default judgment entered for failure to appear in. explaining why a direct appeal from a rule 37 default judgment might be permissible). Thus, a defendant who has a default judgment entered against him as a discovery sanction will have had every opportunity to raise a defense for failure to state a claim before the trial court. Accordingly, any rationale that might exist for permitting a defendant to bypass the trial court and raise such a challenge for the first time on appeal in the context of a default Judgment entered for failure to appear does not support such a rule with respect to a default judgment entered as a discovery sanction. Indeed, the parties in this case had been actively involved in litigation for more than two years. Before entering default judgment, the trial court held two separate hearings, yet Defendants never argued to the trial court that the Complaint failed to state a claim upon which a default judgment could be based. Because trial courts should generally be afforded "an opportunity to correct error and to end controversies before an appeal becomes necessary," [6] id. at 1179, we decline to take upon ourselves the burden of weighing the sufficiency of the pleadings on appeal without the benefit of the trial court's analysis where Defendants had every opportunity to raise the issue in the trial court.
III. Attorney Fees on Appeal
$20 Because we affirm the default judgment against Defendants, and because the promissory notes for the Investments contain provisions for payment of attorney *88 fees if an action is brought to enforce them, Defendants are liable to Fu for attorney fees and costs reasonably incurred on appeal. See Management Servs. Corp. v. Development Assocs., 617 P.2d 406, 409 (Utah 1980) ("[A] provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract...."). We remand for the trial court to determine the amount of those fees and costs incurred on appeal.
CONCLUSION
[21 The trial court did not abuse its discretion by striking Defendants' Answer and entering default judgment against Defendants as a discovery sanction. Furthermore, because Defendants have failed to preserve their claim that the facts alleged in the Complaint do not support recovery under the stated legal theories, we do not address that issue on appeal. Accordingly, we affirm the trial court's Order and Judgment. We also award Fu attorney fees and costs reasonably incurred on appeal, to be calculated by the trial court on remand.

. The Complaint also included S. Parker Smith as a named defendant. During litigation, however, Smith filed a Notice of Bankruptcy Filing and Stay. As a result, default judgment was not entered against Smith and he is not a party on appeal.

. We also suggested in Sixteen Thousand that a direct appeal from a default judgment entered as a rule 37 sanction might be permissible without an intervening motion to set aside because a rule 37 defendant, by virtue of having appeared before the trial court, would be able to preserve an argument regarding the sufficiency of the plead- ' ings without filing a postjudgment motion. See State v. Sixteen Thousand Dollars U.S. Currency, 914 P.2d 1176, 1178 (Utah Ct.App.1996). This is consistent with the primary holding of Sixteen Thousand-that the preservation rule applies to appeals from default judgments. Id. at 1178-79.

. Unlike the dissent, we are not concerned that the holding of Sixteen Thousand contradicted dicta in Katz v. Pierce, 732 P.2d 92 (Utah 1986) (per curiam), suggesting that a party against whom a default judgment has been entered for failure to appear might have appealed directly from the judgment rather than the 60(b) motion to set aside. See id. at 95. First of all, this dicta consists of a single sentence without further explanation. See id. ("[Nlo direct appeal from the judgment was taken, although appellants might have done so."). Furthermore, the Katz court's rejection of the damages argument was based on the fact that the argument had not been raised by the appellants in their rule 60(b) motion, and the court adamantly condemned the assertion of "new grounds ... for the first time on appeal without having afforded the trial court an opportunity to rule on those grounds or to correct any alleged deficiency." Id. The Katz court's emphasis on the importance of preservation makes it unlikely that it intended by dicta to imply that preservation in the context of a direct appeal is unnecessary. In any event, unlike the explicit holding in Sixteen Thousand, the dicta in Katz is not controlling authority.

. In Nishimatsu, the defendant appealed directly from the default judgment without first filing a motion to set aside. See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1204 (5th Cir. 1975). Thus, the Nishimatsu defendant's challenge to the sufficiency of the complaint appears not to have been preserved. However, preservation is neither the crux of the Nishimat-su court's analysis nor the basis for the Skanchy court's reliance on that analysis.

. It is ultimately unclear whether the Skanchy defendant's challenge to the sufficiency of the complaint was actually preserved. The court observed only that the defendant "moved to set aside the judgment" and that "[t]he district court denied the motion as to liability but granted it with respect to damages." See Skanchy v. Calcados Ortope SA, 952 P.2d 1071, 1073-74 (Utah 1998). However, even assuming that the issue was not preserved, the Skanchy court's failure to explicitly address preservation, and the defendant's apparent failure to contest the appeal on preservation grounds, suggests to us that the Skanchy court's ruling was not intended to carve out an exception to the preservation rule. It seems more likely that the preservation issue was simply never adequately brought to the supreme court's attention and that the court consequently considered the defendant's argument as though it were preserved.

. The importance of this policy to the proper functioning and respective responsibilities of our courts is underscored by the extent of the analysis in which the dissent was required to engage in order to determine, in the first instance, whether Fu's Complaint stated a claim. See infra M 31-54.