*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 59**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

YUANZONG FU, AKA FRANK FU,
*Respondent,*

*v.*

CLYDE RHODES, JOSEPH NASO, AND RENE NASO EVANS,
*Petitioners.*

No. 20130622
Filed July 23, 2015

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Judith S. H. Atherton
No. 080916174

Attorneys:

Randy B. Birch, Heber City, for petitioner

David J. Hodgson, Salt Lake City, for respondent

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PARRISH, and JUDGE HANSEN joined.

Due to his retirement, JUSTICE NEHRING did not participate herein;
DISTRICT JUDGE ROYAL I. HANSEN sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument on this matter and,
accordingly, did not participate.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 When the real estate bubble burst in 2008, the petitioners—a group of real estate investors—defaulted on a series of loans from respondent Yuanzong Fu. Fu sued. After more than a year of pretrial litigation, the district court entered default judgment against the petitioners because of their repeated failure to meet discovery

deadlines. This judgment was affirmed by the court of appeals, which decided unanimously that the district court had not abused its discretion by entering a default. *Fu v. Rhodes*, 2013 UT App 120, ¶¶ 10–11, 304 P.3d 80.

¶2   But the court of appeals was divided by a second issue, namely, whether the petitioners could argue for the first time on appeal that Fu's complaint was legally insufficient. Two judges concluded that they could not because challenges to the legal sufficiency of a complaint must ordinarily be preserved, and court of appeals precedent did not allow an exception for cases of default judgment. *Id.* ¶¶ 12–19 (citing *State v. Sixteen Thousand Dollars United States Currency*, 914 P.2d 1176 (Utah Ct. App. 1996)). One judge disagreed, arguing that our precedent required such an exception. *Id.* ¶¶ 23–30 (McHugh, J., concurring in part and dissenting in part) (citing *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998) ("On appeal from a default judgment, a defendant may contest the sufficiency of the complaint and its allegations to support the judgment." (internal quotation marks omitted))).

¶3   We granted certiorari, and we affirm the court of appeals on both issues.

## BACKGROUND

¶4   In 2006 and 2007, Yuanzong Fu lent the petitioners over $170,000 to be used in their various real estate investment businesses. In August 2008, Mr. Fu filed a complaint against the petitioners alleging that they had failed to make required payments. His prayer for relief rested on claims of breach of contract, foreclosure, fraudulent transfer, fraud, and negligent misrepresentation.

¶5   The petitioners filed their answer, and the parties proceeded to discovery. The petitioners missed their first discovery deadline in March 2009, and Mr. Fu agreed to a two-week extension. After the petitioners missed their second deadline, the district court granted Mr. Fu's motion to compel discovery in May 2009. The order warned the petitioners that if they failed to produce all requested documents within ten days, their answer would be stricken and Fu would be entitled to judgment as prayed for in the complaint.

¶6   More than eight months later, in January 2010, the district court asked the parties why the lawsuit should not be dismissed for failure to prosecute, as nothing had been filed with the court in the entire intervening time. Mr. Fu answered that the respondents had still not complied with the court's May 2009 discovery order. The

court set one last deadline for petitioners to produce all requested materials or have their answer stricken: May 31, 2010.

¶7   On June 2, Mr. Fu moved the court to enter default judgment against the petitioners as a discovery sanction under rule 37 of the Utah Rules of Civil Procedure. Fourteen months after the original discovery deadline, Mr. Fu claimed he had still not received a number of requested financial records, including the "books and records" of the petitioners' investment company, proof of the payments that the petitioners claimed they had made on the loans, and the petitioners' tax returns. He alleged further that the petitioners' failure to produce these documents had prevented him from deposing a necessary witness. He accused the petitioners of bad faith and dilatory tactics, citing their long and persistent history of missing discovery deadlines.

¶8   The petitioners told a different story. They claimed that most of the requested records had been provided, including their bank statements, all their email correspondence with Mr. Fu, and all their files on the specific investment properties that were relevant to the case. Other records, including their tax returns, could not be provided because they did not exist. In response to Mr. Fu's allegations of bad faith, they claimed that Fu himself had caused much of the delay by not requesting to see the records when the petitioners made them available. And to the extent the delay was the petitioners' fault, they made excuses: they weren't entirely sure what documents Mr. Fu was asking for, one of the petitioners traveled extensively for work, and another was unemployed and moving from house to house as his properties were foreclosed from under him. The petitioners' counsel pointed out that he was representing them for free because they'd lost so much money and because he'd been friends with petitioner Rhodes since middle school.

¶9   Nevertheless, the petitioners acknowledged that they had not strictly complied with the discovery requests—not even by August 2010, nearly three months after the final discovery deadline, when the court held its first hearing on Mr. Fu's motion. After the court granted the motion, the petitioners objected to the entry of default judgment, and the court held a second and final hearing in December 2010. The petitioners acknowledged again that their production of discovery materials had not "technically" complied with the court's orders, and the court granted Mr. Fu the relief prayed for in his complaint.

¶10 On appeal the petitioners argued, as they had below, that their discovery failures did not merit the extreme sanction of default. *Fu v. Rhodes*, 2013 UT App 120, ¶ 10, 304 P.3d 80. They also argued,

as they had not below, that default judgment could not be entered on some claims because Mr. Fu's complaint had not alleged sufficient facts to support relief. *Id.* ¶ 9. Specifically, respondents argued that Fu's alleged facts did not allow the court to pierce the veil of their LLC and hold them liable in their personal capacities. *Id.* ¶¶ 33–42 (McHugh, J., concurring in part and dissenting in part). They also argued that Mr. Fu's alleged facts did not support his claims of fraud, negligent misrepresentation, foreclosure, and fraudulent transfer. *Id.* ¶¶ 43–53.

¶11 The court of appeals rejected the first argument, concluding that the default judgment had not been an abuse of discretion, and refused to consider the second set of arguments because they had not been preserved. We now review the court of appeals' decision on certiorari.

## STANDARD OF REVIEW

¶12 "On certiorari, we review for correctness the decision of the court of appeals . . . . The correctness of the court of appeals' decision turns, in part, on whether it accurately reviewed the [district] court's decision under the appropriate standard of review." *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096. In other words, in order to determine whether the court of appeals erred in finding that the district court did not abuse its discretion, we must ourselves review the district court's decision for an abuse of discretion. *See Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 ("[D]istrict courts are granted a great deal of deference in selecting discovery sanctions, and we overturn a sanction only in cases evidencing a clear abuse of discretion.").

¶13 We must also determine whether the court of appeals erred in deciding it could not consider the petitioners' legal sufficiency arguments because they were unpreserved. This was a decision of law, which we review for correctness. *See Arnold v. Grigsby*, 2009 UT 88, ¶ 7, 225 P.3d 192 ("We review conclusions of law for correctness, granting the court of appeals' decision no deference.").

## ANALYSIS

### I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

¶14 When reviewing district courts' discovery sanctions, we "follow[] a two-step process." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957. The first step is to ascertain whether "the district court has made a factual finding that the party's behavior merits sanctions." *Id.* Second, if the district court has made the necessary factual finding, then we review its decision for an abuse of discretion. *Id.*

*A. Sanctions Were Appropriate*

¶15 Here the first inquiry is not quite satisfied. The district court based its sanction on the petitioners' "continued failures to comply with timely discovery, their failure to comply with the Court's previously entered Order to Compel, and their failure to comply with the Case Management Orders." It did not, as *Kilpatrick* required, make a factual finding that the petitioners' discovery violations were "the result of willfulness, bad faith, fault or persistent dilatory tactics." *Id.* ¶ 26; *see also Morton v. Cont'l Baking Co.*, 938 P.2d 271, 276 (Utah 1997) ("[Discovery sanctions are warranted if] (1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process.").

¶16 But "[a] failure to make factual findings regarding willfulness is not always grounds for reversal." *Kilpatrick*, 2008 UT 82, ¶ 29. We can still affirm sanctions if the record and the court's factual findings demonstrate a basis for them, *id.*, and we find that to be the case here. Although we do not believe that the petitioners' repeated disregard of discovery deadlines was tactical or the product of bad faith, neither are we persuaded that the petitioners ever took the court's deadlines as seriously as they should have. We find it particularly offensive that in August 2010—two months after the final discovery deadline, with the threat of default judgment imminent—the petitioners' counsel still did not know exactly what records had been produced, or even what records existed. This seems to us to manifest an unwillingness to do the work involved in responding adequately to discovery, as well as a careless disregard for the court's time and the plaintiff's right to prosecute his case.

¶17 Under such circumstances, some sort of sanction was clearly appropriate. We must therefore determine whether the district court abused its discretion by choosing default judgment as the appropriate sanction.

*B. The Court Did Not Abuse Its Discretion by Entering Default Judgment*

¶18 One of the situations in which a court can appropriately enter default judgment is when "there has been a frustration of the judicial process, viz., where the failure to respond to discovery impedes trial on the merits and makes it impossible to ascertain whether the allegations of the answer have any factual merit." *W. W. & W. B. Gardner, Inc. v. Park W. Vill., Inc.*, 568 P.2d 734, 738 (Utah 1977). This is essentially the situation Mr. Fu complained of to the court below: "We've alleged fraud [in the complaint] . . . . We believe

there's absolute fraud, and we need these books and records to prove it. They have not provided them."

¶19 Examining the record, we believe there was an adequate basis for the trial court to agree with Mr. Fu that the petitioners' discovery failures had rendered further litigation pointless. To begin with, there is the sheer magnitude of the delay. The petitioners failed to comply with their discovery deadline no fewer than four times, twice in the face of court orders threatening default judgment. In May 2009, the court ordered the petitioners to finish discovery in ten days or have their answer stricken. Yet some requested records remained outstanding a full fifteen months later.

¶20 In addition to the magnitude of the delay, we are also struck by the petitioners' apparent unreliability in explaining their discovery difficulties to Mr. Fu and the court. As we already noted, the petitioners' counsel was still unsure about the status of important discovery requests more than two months after the final deadline. We also note that, although petitioners' counsel has claimed that none of the requested tax returns existed at the time of the final discovery deadline on May 31, 2010, the record demonstrates that he himself thought they existed as late as May 5 of that year. In other words, sixteen months after Fu requested the petitioners' tax returns, the petitioners had still not informed their lawyer that they had no tax returns. Under such circumstances, it is unsurprising that Mr. Fu claimed he had received conflicting reports from petitioners' counsel about the availability of various documents, and likewise unsurprising that the district court apparently believed him.

¶21 It is possible, as the petitioners now argue, that lesser sanctions would have been sufficient to allow justice to be done in this case. Further, we do encourage district courts imposing sanctions to consider alternative sanctions carefully before entering a default. But the question on appeal is not whether some other sanction would have been more appropriate; it is whether the party challenging the trial court's decision can demonstrate that default judgment was inappropriate. And where, as appears to be the case here, a party's conduct during discovery has destroyed its credibility with opposing parties and with the court, we cannot conclude that the court's decision to enter default judgment was an abuse of discretion.

## II. THE PRESERVATION RULE BARS CONSIDERATION OF THE PETITIONERS' LEGAL INSUFFICIENCY ARGUMENTS

¶22 Before the court of appeals, the petitioners argued for the first time that the factual allegations of Mr. Fu's complaint did not legally support the relief that the district court had granted. *Fu v.*

*Rhodes*, 2013 UT App 120, ¶ 9, 304 P.3d 80. They acknowledged that this issue was not preserved, *id.*, and the court of appeals declined to consider it, *id.* ¶ 19.

¶23 On certiorari, the petitioners argue that the court of appeals erred by not acknowledging an exception to the preservation rule for parties who challenge the legal sufficiency of the complaint on appeal from a default judgment. To support this argument, they appeal to the principle that a default judgment may not be entered on the basis of a legally insufficient complaint. Further, they point to our decision in *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071 (Utah 1998), which they claim held "that, on appeal from a default judgment, a defendant may, for the first time, contest the complaint's sufficiency to support the judgment." The court of appeals rejected this interpretation of *Skanchy*, concluding that the *Skanchy* court did not decide "whether a claim that a complaint was insufficient to support a default judgment could be raised for the first time on appeal, but whether it could be raised *at all*." *Fu*, 2013 UT App 120, ¶ 16.

¶24 We find these arguments to be somewhat beside the point. *Skanchy* concerned a default judgment entered for failure to appear, *Skanchy*, 952 P.2d at 1074, and the difference between that situation and this one is obvious. A defaulting party who has failed to appear will typically have learned of the lawsuit very recently, and will have had little time to assess the lawsuit's merits before the deadline passes for filing a notice of appeal or a rule 60(b) motion. The same cannot be said of a party facing default because of discovery sanctions, whose situation more closely resembles that of a party that has lost at summary judgment or even after trial.

¶25 The petitioners' circumstances are illustrative. They had already been litigating this case for over two years when the court granted Mr. Fu's motion for entry of judgment. Even after the court granted Fu's motion, the petitioners still had time to file objections to the proposed default judgment order, and they did so, leading the district court to hold a second hearing on the issue three months after it granted the motion. The petitioners had ample opportunity to contest the legal sufficiency of Mr. Fu's complaint before the district court, and they failed to take advantage of it. We see no reason to protect them from the consequences of that failure.

¶26 We therefore hold that where default judgment has been entered as a discovery sanction, a party appealing from that judgment may challenge the legal sufficiency of the complaint only if it has preserved the issue before the district court or if one of the normal exceptions to the preservation rule applies. The petitioners

have identified no such exception here, and so we find no fault with the court of appeals' decision not to consider this issue.

## CONCLUSION

¶27 The district court did not abuse its discretion, and the court of appeals correctly determined that it should not consider the issue of the complaint's legal sufficiency because that issue had not been preserved.

¶28 The decision of the court of appeals is affirmed.

———————